The next case for argument is Varela-Gutierrez v. Gonzales. Good morning, Your Honor. My name is Robert Tao, appearing here on behalf of Mr. Varela-Gutierrez. I would like to reserve two minutes by way of rebuttal. The issue in this case concerns the denial of an application for adjustment of status and a 212-H waiver, a discretionary waiver that's needed because Mr. Varela has been convicted of an assault charge. Mr. Varela presents the following. There are at least three legal and constitutional problems with the immigration judge's decision. First of all, she excluded, she refused to allow the testimony of a witness who was available, Mr. Varela's mother-in-law, who had relevant information. Second, the immigration judge fundamentally misunderstood the significance of the certificate of probable cause that was used in connection with his guilty plea. And third, the immigration judge made a legal mistake with respect to that issue. And third, the immigration judge made a legal error with respect to her evaluation of rehabilitation or remorse. Let me just ask about that. On the issue of rehabilitation, it certainly is okay. You don't have to show rehabilitation to become statutorily eligible, but why can't the immigration judge consider rehabilitation or lack thereof in considering waiver? Well, no, it's our position that rehabilitation is certainly a relevant consideration in the discretionary decision. The problem is that when the immigration judge made that determination of no rehabilitation, she made a legal mistake. Her decision on rehabilitation was inconsistent with the governing BIA precedent decision. In other words, when she said there's no rehabilitation, the only reason that she did that was because Mr. Varela had testified in a manner inconsistent with the certificate of probable cause. He contested the information in that certificate. She determined that lack of rehabilitation was a disqualifying event. Is that right? She might be able to consider it in the overall discretionary determination, I suppose, but to say because there was a lack of, therefore, he is not entitled to treat it as a disqualifying event, I think. Correct. Well, the decision is not entirely clear, but there are two respects with respect to this rehabilitation issue. On the one hand, she does appear to be saying that she's denying this application because there's no rehabilitation. It's certainly clear that she's saying she's denying this application because Mr. Varela testified in a manner — because he challenged the information in that certificate of probable cause. That's clearly an error. The relevant board decision, the matter of Mendez-Morales, the board says that you can show rehabilitation even if you contest your guilt. Well, you know, this is confusing, but I came to the conclusion that the immigration judge did apply the two steps. She said assuming extreme hardship, then went to the second step. It's the way she applied it. Because of lack of rehabilitation, I find there should be no waiver. Is that correct? Well, yes. She says assuming there's extreme hardship in this case, she's going to deny the application as a matter of discretion. Now, that discretionary denial, that's where she made her legal mistake. Why was it a legal error? She was following the two-step process and then exercising her discretion on the — you might disagree with the way she exercised her discretion, but why would that be a legal error? Well, if — so here's her analysis of why Mr. Varela has not established rehabilitation. She says Respondent Mr. Varela is not remorseful for what he has done. He has a conviction for assault, and the reason he's not remorseful is because he testified that he was not the aggressor, inconsistent with the certificate of probable cause. That's just step two of the analysis. But that's the only reason she gives for the no rehabilitation finding. That analysis, that's inconsistent with what the board says. You cannot take just because a person contests evidence, says he or she is not guilty of the offense, which is not actually what Mr. Varela did, but just because a person contests the information in the underlying criminal record, that's not a basis. You cannot use that as the sole basis for finding no rehabilitation. In other words, basically what you're arguing is that he could not — she would not let him dispute the facts in the — or she would not accept his explanation of the facts in the certificate of probable cause. That's correct. But did she do that as a matter of law, or did she say, you know, I've listened to your story, I read the certificate of probable cause, and I just don't believe you? No. She did that — I mean, her — what she says in the decision is this case — I'm quoting — this case turned on only one issue and one issue only. And what that is, she says, is that whether his testimony is consistent or inconsistent with the certificate of probable cause. So he had no choice, in other words, but to testify consistent with the certificate — with what was set forth in the certificate of probable cause. That's right. That's right. And any deviation from that, and he was foregone conclusion. Right. And that's the legal error that the judge made in using that certificate of probable cause. Do you contend that the judge — that the judge basically prejudged the case? Well, yes. We do contend that she prejudged the case, because she said at the outset, before any testimony was heard, she said, you know, there's one issue and one issue only, and that is whether you're going to testify in accordance with the certificate of probable cause. Well, let me ask you this. You know, suppose she was just being a diligent judge, and she prepared for the hearing. She saw the exhibits. She read it. She said, hmm, this is pretty serious. Comes out and says, look, here's what the certificate of probable cause says. I'm concerned, you know. It's going to — a lot of this is going to depend upon what your client testifies to you. What's wrong with that? Well, there's nothing wrong with that, if that's as far as she goes. But then she has a duty to hear the evidence, to hear the testimony of the live witnesses, and weigh that testimony, and determine credibility. What she says in her — you know, again, at the outset, she says there's one issue and one issue only, and then in her decision, she says you're not credible because you — and the only reason she gives for this adverse credibility determination is because you testified inconsistent with this hearsay evidence in the certificate of probable cause. And that's what's fundamentally incorrect with her. That's the legal error that she makes. When Mr. Varela pled guilty, it was an Alford plea in which he says I'm not guilty, but I recognize the fact that there is some evidence against me. And the judge — the sentencing judge can look at the certificate of probable cause and use that as a factual basis for the guilty plea. When he says that, he's not — he's not agreeing that everything, every jot and tittle in that certificate of probable cause is true and correct. He's just saying that constitutes a factual basis. When he later on comes in front of the immigration judge, it's really a legal error for that immigration judge to say, well, look, you signed off — you agreed that this certificate of probable cause can be used as a factual basis, and therefore, I'm going to accept every last thing in that — in that — Well, the CPC constitutes hearsay evidence, doesn't it? It does constitute. There's hearsay evidence. And it could be — he could rely on it, correct? It can — that's correct. I mean, we don't — we do not have an objection to the fact that there's — I mean, generally speaking, in immigration proceedings, hearsay evidence is admissible. But the error that the judge makes is saying that that's the only thing she's going to consider in evaluating the case. That's the legal error that we submit — the immigration judge made. Well, she also said that she was going to hear him testify to see if she believed him. And she said, I don't believe you. And then she said, and I don't believe your wife. And he had said, well, yeah, well, let me put on my mother-in-law. You might believe her. She said, no, I'm not going to listen to the mother. I don't want to hear the mother. Well, that's correct. That's another — another objection that we have to the — to the immigration judge's decision. We think that's another respect in which the immigration judge's decision was a — constitutes a legal error or a constitutional error in refusing to allow that witness to testify. So you're saying that that was an abuse of discretion. But I found it hard to find in the record where she said, you're not eligible. She said, assuming you're eligible, I'm exercising my discretion to say that you don't deserve a waiver. Well, but her — her — you know, if you look at — if you look at her analysis in her decision as to why she refuses to accept Mr. Varela's testimony, what she says, and the only thing she says, is that he's not credible because his written declaration, his testimony, completely contradicts the statement in the CPC. That's the only reason that she gives, and that's a legally defective or inadequate analysis. Thank you. I'll give you a minute for rebuttal. Thank you. May it please the Court, Brian Beyer, on behalf of the Attorney General, has responded to this matter. I have three basic points about this case. The first is that the Court must treat this as a petition for review of an agency decision. Although it came up to the Court as a habeas appeal under the REAL ID Act, it should be converted to a review of the immigration judge's decision as a record review matter. My second point is that, from a legal standpoint, this is a fairly routine agency decision. It's a decision not to exercise discretion to waive the application of grounds of inadmissibility under a 212H. It's a straightforward application of a familiar balancing network articulated by the Board long ago and applied faithfully here by the immigration judge. The third point – Are you claiming this Court has no jurisdiction over this case? That's correct, Your Honor. Don't we have two coverable constitutional claims here? One, that the mother-in-law was not permitted to testify, and that the immigration judge prejudged the case? Aren't those two coverable constitutional claims that would give us jurisdiction? Well, Your Honor, as argued in the brief, there's additional limitations on jurisdiction beyond just the requirement that there be a constitutional – coverable constitutional claim. Mr. Varela was required to exhaust these claims to the Board of Immigration Appeals, and he did not do so. Let me focus on the mother-in-law's claim first. The first point is that in Mr. Varela's brief, reply brief, for the first time, there is a claim that the mother-in-law had testimony relevant to rehabilitation. There's no evidence in the record about that. That contention has never been presented. The citation that is in the reply brief to support that assertion simply does not support it. But did he want her to testify so that he could bring that out? I'm sorry? Didn't he want her to testify so he could bring that out? Well, Your Honor, judge – the immigration judge asked Mr. Varela's counsel for a proffer as to what her testimony would be. And the proffer was that she would be able to testify about a conversation that Mr. Varela had – excuse me – when he arrived at his wife's parents' house after this incident had occurred. And that's it. I mean, there's nothing else. The only other point was that the mother-in-law would be able to testify as to the potential hardship of Mr. Varela's removal. But that's not a material issue in this case, given that there was an exercise of discretion. The immigration judge took all of the mother-in-law's declaration as true and accredited it, weighed the equities, and concluded that there was no – Well, the immigration judge had pretty well indicated that she just didn't believe in the petitioner at all. That's – In the course of the hearing. And I thought – I thought that what he was attempting to do with the mother-in-law was to perhaps rehabilitate him in some way or to show that he had some – that he had credibility. And although the declaration that she submitted detailed the hardship business, as well as to show that maybe, you know, this fellow had – was credible. Well, why can't – why can't he do that? It's not – Well, Your Honor – You know, it's a tough standard to meet. Well, the immigration judge has discretion as to how the hearing is to proceed. And the immigration judge evaluated the proffer. It was – the record reflects that the conversation that the mother-in-law had with the petitioner also occurred in the presence of Mr. Varela's wife. And Mr. Varela's wife testified. And in light of that – Well, the immigration judge told Mr. Varela – or said at the hearing that Mr. Varela got his wife to submit false testimony. Yes, Your Honor. But that's – So, you know, so now what's he going to do? Well, Your Honor – He just – the fact that it was – you know, she says – I don't know where she got that – how she could make that factual finding. She said, Mr. Varela, you presented false testimony. You got her to lie. I think what that fact relates to is this particular document in the record that was the note from Mr. Varela's wife and a neighbor to Mr. Varela's criminal defense attorney, which I would add there was no testimony about during Ms. Varela's direct or cross-examination. Mr. Varela did not choose to highlight that information or anything. And the immigration judge concluded that the statements in there were false. And she relied on a number of factors that were evident in the – you know, in the record to conclude that. I mean – What she said, though, was that Varela – Mr. Varela got – you know, had his wife testify falsely, that he did it, that he was responsible for her testifying falsely. There's no evidence of that. Right. Your Honor, the false testimony that relates to this one particular document, it wasn't – I don't believe the immigration judge said that Mr. Varela had told his wife to get on the stand and lie. I think that the only factual issue that either Mr. Varela's wife or the mother-in-law could have possibly contradicted with respect to the certificate for probable cause was whether or not he had told his wife that he thought he had killed someone. Neither Mr. Varela's wife nor his mother-in-law had any information at all about the crime. They were not witnesses. They did not, as far as I know, participate in the investigation. That's all you're saying. Let me just – there's one thing that troubled me about I.J.'s conduct of the hearing. Remember when he was on the stand after he testifies for a bit? He says, now, Mr. Varela, I want to inform you that, you know, you could be subjected to prosecution for lying. Yes, Your Honor. What do you make of that? Well, it doesn't seem like an improper thing to do. I mean, as the case was proceeding – Well, she made it pretty clear at the outset that what he said, what was contained in the certificate of probable cause was like, you know, that was it. That was the truth. That's what happened here. Well, Your Honor, I have to disagree with you. I mean, what – We know it was an Alford police, and we know that he's not admitting the facts contained in the factual. That's correct, Your Honor. But the part of the hearing that Mr. Varela is focused on here, the statement that this case relates to really one issue, which is his explanation for what happened, really needs to be seen in its context. That was – that occurred in the course of the immigration judge kind of discussing what the evidence and witnesses were and framing the case for purposes of determining how the hearing would go forward. And the immigration judge did not prejudge this case. I mean, it's simply not fair to say that – a fair reading of the record to say that the immigration judge had prejudged this case. I mean, she heard the testimony. It was not the fact that Mr. Varela disputed the events in the certificate of probable cause. It was the fact that he did not have a good explanation for many material elements of the crime as reflected in the certificate for probable cause. And he did not have a good explanation for how the crime, if it occurred as he suggested it did, could plausibly have occurred. I mean, for example, there was – the certificate for determination of probable cause referred to defense wounds on the victim. And he didn't have any explanation for how that could be. And, you know, there was – there were just a number of problems with his whole presentation that undermined his credibility. When he tried to – when the immigration judge was asking questions, well, you know, why did you plead guilty? You know, do you remember making the statement? His answer was, I don't remember. I don't know. I can't remember. And she didn't take – and the immigration judge was entitled to disbelieve that, especially in the light of the record of conviction, reflecting that certifications from the lawyers and the judges, that he had an opportunity to read it, to understand it, to ask questions, and he was competent to do so. And the immigration judge — Kennedy. Couldn't read it, could he? Didn't he have a language problem? Or have I got the wrong case in mind? Well, Your Honor, the document was in both English and Spanish. I see. And the record reflects that it was translated to him by an interpreter and that he understood it. Okay. And so, really, he's – his testimony just didn't hang together. He was attempting to – the immigration judge was entitled to conclude that he was attempting to diminish his role in the crime and to avoid the consequences of his behavior in order to – to obtain a waiver. And the immigration judge concluded that, you know, in light of that, he really wasn't showing remorse or rehabilitation, and there were other adverse factors that outweighed the factors that he advanced for permitting him in. Okay.  Thank you. Thank you. I would just like to make one or two brief comments. First of all, Mr. Varela clearly did acknowledge his role in this offense. It's not as if he said it didn't happen. He did contest that he was not the aggressor, but he admitted that he had attacked the victim, that he had used a knife in his defense, and that the victim had been cut. He certainly explained in a reasonable manner what had happened in that incident that underlied his guilty plea. Again, the problem, as we said before, the problem is the immigration judge said there's no rehabilitation. Why not? Because he contested – contested those allegations in the certificate of probable cause. That's a legal error that the immigration judge makes when a person accepts that factual basis that does not constitute a waiver of the right to contest all of those allegations in the certificate of probable cause at a later time. Would you comment on the failure to exhaust argument? Yes, I can. With respect to the mother-in-law's testimony, at trial it's very clear we objected. That's very clear in the record. I think in the – at L-347, we specifically state we have an objection to the immigration judge excluding or not allowing Mrs. Mathis, the mother-in-law, to testify. On appeal to the Board of Immigration Appeals, then there were – there were two occasions in the brief where we object to the exclusion of Ms. Varela on L-439. We say that the immigration judge excluded the testimony of Mr. Varela's mother-in-law, which would have helped to establish the equities in his favor. And again, on L-448, in the appeal to the Board of Immigration Appeals, we say that the immigration judge improperly excluded the testimony of the mother-in-law. So very clear that those issues were explained to the – to the Board of Immigration Appeals and at the immigration judge level. Thank you. Thank you, Your Honor. Thank you. Thank you for the arguments. The matter will be submitted.
judges: D.W. Nelson, Thompson, Paez